IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AMY J.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20-CV-173 |
| | ) |
| **ANDREW SAUL, COMMISSIONER,** | ) |
| **SOCIAL SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Amy J. ("Amy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Amy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly account for her moderate impairments in concentration, persistence, or pace; by failing to provide a function-by-function analysis of her physical impairments; and by improperly assessing her subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Amy's Motion for Summary Judgment (Dkt. 11) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 13).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Amy failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Amy filed a previous claim for DIB in January 2014, alleging disability since December 2013. Amy's claim was denied by the Commissioner at the initial and reconsideration levels of administrative review, and ALJ Jeffrey Schueler entered a decision denying Amy's claim for benefits on May 19, 2016. R. 64–83. Amy appealed the ALJ's decision, and it was subsequently affirmed and upheld by this Court and the 4th Circuit Court of Appeals. See Amy J. v. Berryhill, No. 7:17cv116, 2018 WL 4624830 (W.D. Va. Sept. 6, 2018) aff'd Johnson v. Saul, No. 18-2171, 795 Fed. Appx. 189 (4th Cir. Feb. 25, 2020).

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

Amy filed this current application for DIB on January 30, 2017, claiming that her disability began on May 20, 2016, due to multiple sclerosis, grand mal seizures, hypertension, panic attacks, gout, muscle spasms, and degenerative disc disease. R. 209–233. The state agency denied Amy's current application at the initial and reconsideration levels of administrative review. R. 91–120. On November 1, 2018, ALJ Schueler held a hearing to consider Amy's claim for DIB. R.45–59. Amy was represented by counsel at the hearing but refused to attend the hearing in person due to belief that she would not get a "fair trial" with ALJ Schueler. Dkt. 49. Vocational expert John Newman testified at the hearing. On February 6, 2019, the ALJ entered his decision analyzing Amy's claim under the familiar five-step process[3] and denying her claim for benefits. R. 24–39.

The ALJ found that Amy suffered from the severe impairments of multiple sclerosis, seizure disorder, headaches, major depressive disorder, generalized anxiety disorder, and panic disorder. R. 27. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 28–30. The ALJ concluded that Amy retained the residual functional capacity ("RFC") to perform a range of light work. R. 30.  Specifically, the ALJ found that Amy can never climb ladders, ropes, or scaffolds; can occasionally balance; can frequently climb ramps or stairs, stoop, kneel, crouch or crawl; and should avoid even moderate exposure to noise, vibrations and hazards.  The ALJ also found that

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Amy needs a low-stress job, defined as having only occasional decision-making or changes in the work setting. R. 31.

The ALJ determined that Amy could not perform her past relevant work as a pharmacy aid or housekeeping cleaner, but that she can perform other jobs that exist in the national economy, such as packer and inspector/tester. R. 36–38. Thus, the ALJ concluded that Amy was not disabled. R. 38. Amy appealed the ALJ's decision and on January 28, 2020, the Appeals Council denied her request for review. R. 1–4. This appeal followed.

## ANALYSIS

### Mental Impairments

Amy argues that the ALJ failed to explain how a low-stress job limitation properly accommodates her moderate impairment with concentration as required by SSR 98-6p. Pl. Br. Summ. J. p. 11. I find that substantial evidence supports ALJ Schueler's conclusion that Amy's mental health impairments are properly accommodated by a limitation to low-stress work. As set forth in detail below, there is no set doctrine that a low-stress work limitation is insufficient to accommodate a moderate impairment of concentration; rather, the law charges the ALJ with the responsibility to explain how the limitations in Amy's RFC accommodate her moderate mental health impairment. Here, the ALJ's explanation creates the necessary logical bridge and is supported by substantial evidence.

SSR 96-8P[4] requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (S.S.A. July 2,

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

4

1996); Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638. The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain

5

the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. Indeed, in Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020), the court emphasized that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." Id. (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The Fourth Circuit noted that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The ALJ has the responsibility to address the evidence of record that supports that conclusion and ensure that the hypothetical presented to the vocational expert includes all the limitations set forth in the RFC.

Here, substantial evidence supports the ALJ's decision that despite Amy's moderate limitation with concentration, she can perform low-stress work. Amy suffers from depression, anxiety and panic attacks. Amy began treatment for her mental health in March 2018, when she was evaluated by Darnell Barnes, LCSW. Amy reported a depressed mood; but her appearance, behavior, orientation, speech, range of affect, thought process, thought content and perception were all normal. R. 413. Ms. Barnes diagnosed severe recurrent depression and generalized anxiety disorder and recommended individual weekly therapy. R. 413, 419. Amy continued therapy sessions with Ms. Barnes from March through June 2018, and reported anger, hostility,

6

sadness, anxiety, worrying, insomnia, irritability, obsessing, difficulty concentrating, and panic attacks. R. 385, 406–11. Amy also reported prior sexual abuse by a family member and marital problems. Amy's mental status examinations consistently reflected normal energy levels, range of affect, thought process, perception and behavior. Id.

In step three of the decision, the ALJ determined that Amy had mild limitations with understanding, remembering and applying information; interacting with others; and adapting or managing herself. R. 29–30. The ALJ determined that Amy had a moderate limitation with concentration, persistence or pace, noting that Amy:

> generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace, though she did complain of some concentration issues at times. However, treating practitioners did not observe that the claimant was overly distractible or slow. The claimant did complain of panic attacks at times, and there is some indication the claimant exhibited ongoing issues with mood, as well as thought content, because of ongoing stressors in her life. Based on the above, the undersigned finds that the claimant has a moderate limitation in concentration that supports the need for a low stress job.

R. 30. The ALJ found no limitation with persistence or pace. Id.

In step four of the decision, the ALJ noted that Amy's counsel argued at the administrative hearing that her poor concentration would affect her attendance at work. R. 31. The ALJ reviewed Amy's treatment records and noted that Amy was evaluated at Associates in Brief Therapy to establish care in March 2018, and reported issues with family members, marital problems, and difficulty getting disability benefits. R. 33. Amy reported panic attacks two to three times a week, anxiety, crying spells, irritability, low energy and issues with concentration. Amy's mood was depressed but otherwise her examination was normal. Id. Amy continued therapy sessions with Darnell Barnes, LCSW, from March through June 2018, and reported anger, hostility, sadness, anxiety, worrying, insomnia, irritability, obsessing, difficulty

7

concentrating, and panic attacks. R. 385, 406–11. Amy reported prior sexual abuse by a family member.  Amy's findings on mental status examination reflected normal energy levels, range of affect, thought process, perception and behavior. Id.  On April 13, 2018, Ms. Barnes wrote a letter on Amy's behalf noting that she suffers from severe major depressive disorder, generalized anxiety disorder and panic disorder. R. 385. Ms. Barnes noted that Amy's symptoms are sadness, frequent crying spells, anxiety, excessive worrying, loss of pleasure, insomnia, feelings of worthlessness, irritability, obsessing, difficulty concentrating, and panic attacks two to three times a week. Id. Ms. Barnes noted that she is treating Amy's depression, anxiety and trauma using cognitive-behavioral and experiential techniques of therapy, and that it is likely to be a long and arduous process. Id. Ms. Barnes' letter did not include opinions as to Amy's mental limitations or functional capacity. In May 2018, Amy had continued symptoms, but Ms. Barnes noted progress and improvement. R. 34.

The ALJ reviewed the opinions related to Amy's mental health in the record. On October 4, 2017, state agency physician Andrew Bockner, M.D., reviewed Amy's records and determined that her mental impairments were non-severe. R. 97–98. On December 1, 2017, state agency psychiatrist Jo McClain, Psy.D., reviewed Amy's records and agreed that her mental impairments are non-severe. R. 111–12. The ALJ gave the opinions "some weight" and agreed that Amy did not experience more than mild limitations in most functional domains. R. 35–36. However, the ALJ noted that Amy "does experience significant stressors in her life that would cause as moderate limitations and supports limiting her to low stress work." The ALJ explained:

> As detailed above, the claimant has endorsed some issue with panic attacks and often discussed stressors in her life related to her marriage, familiar relationships, and past abuse.  Again, while these issues cause symptoms that cause some concentration issues, which she had also complained of, the evidence supports no more than mild limitations in the remaining functional domains.  The undersigned notes the claimant's counselor wrote a letter on her behalf after two visits,

> documenting the claimant's reports and her current treatment. However, Ms. Barnes did not offer an opinion as to the claimant's abilities or limitations.

R. 36.

The ALJ also considered his prior 2016 decision finding that Amy's mental impairments were non-severe and gave it some weight as it relates to Amy's mental health issues, noting that evidence after the prior decision reflects that Amy has severe mental impairments. R. 35. Thus, the ALJ limited Amy to a low-stress job, defined as having only occasional decision-making or changes in the work setting. R. 31.

The ALJ's finding that Amy can perform low-stress work despite a moderate impairment with concentration is supported by Amy's mental health treatment records and the opinions of the reviewing physicians in the record. Indeed, the ALJ imposed greater restrictions than those recommended by the state agency physicians. Although Amy occasionally reported difficulty concentrating, there is no indication in the record that it would prevent Amy from performing low-stress work. Amy points to no evidence in the record that the ALJ failed to consider or that the ALJ should have given more weight. There is very little documentation in the record of Amy's difficulty concentrating, and only few subjective complaints of issues with concentration. Amy does not point to any evidence suggesting that the ALJ should have imposed greater restrictions to properly accommodate her mental limitations.

Amy also asserts that the ALJ failed to specifically address her ability to sustain work over an eight-hour workday. Pl. Br. Summ. J. p. 13. This is incorrect. The ALJ explicitly stated that Amy did not have any limitations with persistence or pace which would impact her ability to sustain work over an eight-hour day. R. 30. There is no evidence supporting a moderate impairment with persistence or pace. Amy's subjective statements do not indicate any issues in

9

those areas, nor do any of the mental health or medical records reflect concerns with her ability to sustain work.

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. The ALJ relied upon Amy's therapy notes, her life stressors and her complaints of difficulty with concentration to find that she had a moderate impairment of concentration. The ALJ accommodated that impairment by limiting Amy to low-stress work (defined as a job with only occasional decision-making or changes in work setting), which he included in the hypothetical question given to the vocational expert. R. 56. Notably, no other treating, examining or reviewing physicians assessed more restrictive non-exertional limitations than those set forth in the RFC.

**Function-by-Function**

Amy also asserts that the ALJ did not determine how her physical impairments affect her ability to work on a function-by-function basis. Specifically, Amy alleges that the ALJ failed to make specific findings regarding whether her impairments would cause pain, headaches and fatigue that would require her to take extra breaks and lie down during the day. Pl. Br. Summ. J. p. 15. In support, Amy points to medical records reflecting seizures that cause her to go "blank" and develop a glassy look, along with fatigue and headaches.

Amy has a history of relapsing-remitting multiple sclerosis and underwent a neurological evaluation in March 2016. R. 341. During that visit, she related a seizure disorder. Neurologist Sean Burke, M.D., noted that the office visit was "confrontational, though this had nothing to do with prescription medication. They are more interested in my participation in the patient's disability claim." R. 341. Dr. Burke noted Amy's complaints of "spells of generalized shaking despite anticonvulsant therapy and reported compliance." R. 342. Dr. Burke noted that another

neurologist previously questioned whether these are truly epileptic seizures and noted that two prior EEG's were normal. Upon examination, Amy's mental status and physical examinations were normal. R. 345. Dr. Burke noted that Amy was doing well from a multiple sclerosis standpoint and continued her anti-convulsant medicine to address her seizure disorder. Id.

From September 2016 through March 2018, neurologist Clement Elechi, M.D., noted that Amy reported "small seizures" with a feeling of numbness and tingling, that are followed by a severe headache. R. 289, 292, 371, 390. Dr. Elechi consistently noted that Amy's examinations were normal, and diagnosed relapsing remitting multiple sclerosis, seizures and migraines. He continued her on medication and requested an EEG. R. 290. The EEG study was normal. R. 600–607. Amy was admitted to the epilepsy monitoring unit in August 2018 for a neurological evaluation and a suspicion of seizures was noted, but Amy had no spells during the clinic. R. 614.

On October 4, 2017, state agency physician R.S. Kadian, M.D., reviewed Amy's records and determined that she can perform light work but must avoid even moderate exposure to noise, vibration or hazards. R. 100–01. On December 1, 2017, state agency physician Jack Hutcheson, M.D., reviewed Amy's records and agreed with Dr. Kadian's conclusion that she can perform light work with environmental limitations. R. 114–16.

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting her conclusion, discuss the individual's ability to perform

sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Amy asserts that the ALJ did not explain how his RFC findings address her pain and fatigue and failed to build a logical bridge between the evidence and his RFC findings. Pl. Br. Summ. J. p. 15. The ALJ found Amy's multiple sclerosis, seizure disorder and headaches to be severe impairments. R. 27. He reviewed her medical records in detail, including the records from Dr. Elechi noting her complaints of small seizures and headaches. R. 32–33. The ALJ gave great weight to the opinions of the state agency physicians that Amy could perform light work with environmental limitations, but found that additional postural limitations are warranted "to provide for her safety and account for her pain complaints." R. 36. The ALJ imposed additional limitations of never climbing ladders, ropes or scaffolds; occasionally balancing; frequently

12

climbing ramps, stairs, stooping, kneeling, crouching, or crawling. R. 30–31. The ALJ noted Amy's claims that her pain, fatigue and difficulty ambulating prevent her from working, but also noted that the record reflects inconsistent objective medical findings that do not corroborate her allegations. R. 36. The ALJ noted that Amy's records do not reflect consistent multi-joint inflammation or significant loss of range of motion; and there is no evidence of reduced grip strength, loss of color, muscle spasms, or muscle atrophy. The records do not reflect that Amy had difficulty moving or muscle tremors. R. 36. Indeed, Amy's neurological examinations were unremarkable, her physical examinations were generally normal, and her EEG's were normal. The ALJ stated, "although [Amy] may experience some degree of pain and discomfort, mild to moderate pain or discomfort is not incompatible with the performance of sustained work activity. The objective medical evidence does not establish physiological abnormalities that would preclude [Amy] from performing" a range of light work. R. 36.

The ALJ provided a detailed summary of Amy's impairments, medical records, testimony and opinion evidence. The ALJ discussed Amy's symptoms, her resulting limitations, the medical evidence, medical opinions, Amy's testimony, her credibility and conflicting medical evidence. R. 31–36. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Amy's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. Thus, unlike in Monroe, the ALJ gave a sufficient explanation of why Amy's testimony that her pain, fatigue and seizures prevent her from performing work. Because I was not "left to guess" at how the

ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### Subjective Allegations

Amy asserts that the ALJ erred by relying upon a lack of objective evidence to undermine her subjective complaints, and specifically argues that the ALJ relied upon objective markers that are inapplicable to her severe impairment of multiple sclerosis. Amy is correct that objective evidence is not required to find a claimant disabled. See Arakas v. Comm'r, No. 19-1540, 2020 WL 7331494, at *6 (4th Cir. Dec. 14, 2020). However, that does not require an ALJ to accept without question a claimant's complaints of disabling pain from impairments that do not always have objective markers.

When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step, objective evidence is *not* required to find the claimant disabled." Arakas, 2020 WL 7331494 at *6 (emphasis in the original) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting

14

effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, Amy argues that her multiple sclerosis would not be reflected by multi-joint inflammation, loss of color, muscle spasm, or muscle atrophy, all of which were noted by the ALJ as missing from the record. Indeed, while the ALJ noted the lack of those findings in Amy's records when considering her RFC, those objective markers were not the only evidence upon which he relied to discount her complaints of pain. The ALJ noted that Amy's records reflect that she was doing well from a multiple sclerosis standpoint, both her physical examinations and neurological examinations were unremarkable and certainly did not reflect an inability to perform a range of light work. Amy's MRI's reflected that her multiple sclerosis was not progressing, and her EEG's were all normal. Amy correctly notes that normal studies do not "necessarily exclude seizure," nor do they foreclose exacerbations of her multiple sclerosis symptoms. The ALJ acknowledged that Amy has symptoms from multiple sclerosis and her seizure disorder, and he accommodated those symptoms by limiting her to light work with environmental and postural restrictions. The ALJ imposed an RFC more restrictive than any of the recommendations by physicians in the record. This is not a case like Arakas where the ALJ "'effectively required' objective evidence by placing undue emphasis on [the claimant's] normal clinical and laboratory results." Arakas, at * 8. Further, in Arakas, the claimant had long-term, serious complaints about fibromyalgia symptoms and pain to the point where both treating physicians and state agency consultants suggested potential interference with claimant's ability to work. Here, the only evidence of Amy's subjective complaints of pain is found in her complaints made to her treating physicians, and in her application for benefits. Amy did not appear at the administrative hearing, as set forth in more detail below, and her brief in support of

summary judgment does not cite to any specific subjective complaints that are ignored or improperly discounted by the ALJ. The ALJ gave Amy's complaints of pain consideration, acknowledged that she suffers symptoms from multiple sclerosis, seizures and headaches, considered her physical, mental and neurological examinations and studies, reviewed the opinions of the state agency physicians, and arrived at the conclusion that Amy is capable of performing a limited range of light work. [5]

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **DENYING** Amy's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note

---

[5] Amy also asserts that the ALJ erred by failing to find "good cause" for her failure to appear at the November 1, 2018 administrative hearing. Amy asserts that although she was present outside of the hearing room, she "understood from her attorney that her case was being continued to a different date with a different judge and there was no need for her to go into the hearing room." Pl. Br. Summ. J. p. 19. Amy was represented by counsel at the administrative hearing, who stated during the hearing that his client perceived her appeal of the prior disability denial decision by ALJ Schueler to be a "warrant" against the ALJ personally, and that she would not get a fair administrative hearing with ALJ Schueler. R. 48–49. Counsel stated that his client "refused to appear today and wishes to make that known." R. 49. ALJ Schueler entered a Notice to Show Cause for Amy's failure to appear, to which she responded that she had a warrant out against ALJ Schueler and was told she might get another judge if she waited for a different court date. R. 204. The ALJ found that this explanation did not establish good cause for Amy's failure to appear, and that she constructively waived the right to appear for a hearing. R. 25. The social security regulations do not have set criteria for determining what constitutes good cause for failure to appear at a hearing, but suggest that good cause exists when a claimant did not receive proper notice, if there was an unforeseeable event that prevented the claimant from attending, or if an appointed representative withdraws shortly before the hearing. See HALLEX I-2-4-25. If a claimant fails to appear for a hearing without good cause, the ALJ may dismiss a request for hearing. 20 C.F.R. § 404.957(b). Here, Amy appeared for the hearing but refused to enter the hearing room under the belief that she could get another judge on a different date. Amy was represented during the hearing by counsel, who stated on the record Amy's refusal to enter the hearing room because she felt the hearing would not be fair. Amy provides no reasoning for her claim that the ALJ's conclusion that she constructively waived her appearance at the administrative hearing was in error, and I find none.

any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: July 13, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge