CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 7 2021

# IN THE UNITED STATES DISTRICT COURT JULIA C. DUDLEY, CLERK
# FOR THE WESTERN DISTRICT OF VIRGINIA
BY:
DEPUTY CLERK
## ROANOKE DIVISION

| | |
|---|---|
| **AMY J.,** | ) |
| | ) |
| **Plaintiff** | ) Civil Action No. 7:20-CV-173 |
| | ) |
| **v.** | ) |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,** | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| **Defendant** | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou,

United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of

fact and a recommended disposition. The magistrate judge filed a report and recommendation

("R&R") on July 13, 2021, recommending that plaintiff's motion for summary judgment be

denied, the Commissioner's motion for summary judgment be granted, and the

Commissioner's final decision be affirmed. Plaintiff Amy J. ("Amy") has filed objections to

the R&R and this matter is now ripe for the court's consideration.

### I. Background

Amy filed an application for disability insurance benefits on January 30, 2017, alleging

disability beginning on May 20, 2016. Amy was 39 years old at the alleged onset date. She seeks

disability based on multiple sclerosis, a seizure disorder, headaches, major depressive disorder,

generalized anxiety disorder, panic disorder, gastroesophageal reflux disease, and history of

cholecystitis status post cholecystectomy.

An administrative hearing was held on November 1, 2018, which Amy did not attend. Although, as discussed below, the reason why Amy did not attend the hearing is in dispute, the ALJ found that she constructively waived her right to attend the hearing under HALLEX I-2-4-25(D).[1] R. 25. Amy's attorney appeared on her behalf and a vocational expert testified.

The ALJ found that all but the gastroesophageal reflux disease and history of cholecystitis status post cholecystectomy were severe impairments under the regulations, but that none of them met or medically equaled a listed impairment. The ALJ found that Amy had the residual functional capacity ("RFC") to perform light work with additional limitations of never climbing ladders, ropes, or scaffolds, occasionally balancing, frequently climbing ramps or stairs, stooping, kneeling, crouching, and crawling, and avoiding even moderate exposure to noise, vibrations, and hazards such as moving machinery and heights. The ALJ also determined that Amy needed to work in a low-stress job, defined as having only occasional decision-making or changes in the work setting. The ALJ found that Amy could not perform her past work as a pharmacy aide or housekeeping cleaner but a vocational expert testified that Amy could perform the work of a packer or inspector/tester. The ALJ concluded that there was work in the economy for Amy and therefore she was not disabled. R. 24-39. The Appeals Council denied Amy's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

---

[1] "HALLEX" is an acronym for the Hearings, Appeals, and Litigation Law Manual. It "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council, and Civil Action levels." HALLEX §I-1-0-1. HALLEX is available at https://www.ssa.gov/OP_Home/hallex/hallex.html (last viewed Aug. 10, 2021). While HALLEX does not have the force of law, courts look to it for guidance. Way v. Astrue, 789 F.Supp.2d 652 (D.S.C. 2011).

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Amy has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[2] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the

---

[2] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. §
636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the
court to a specific error in the magistrate judge's proposed findings and recommendations,'"
de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014
WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987
F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)).
"The district court is required to review de novo only those portions of the report to which
specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011).
See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va.
2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the
plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without
focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section
636(b)(1) does not countenance a form of generalized objection to cover all issues addressed
by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report
be specific and particularized, as the statute directs the district court to review only 'those
portions of the report or specified proposed findings or recommendations to which objection
is made.'") (emphasis in original). Such general objections "have the same effect as a failure to
object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827,
829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154
("[T]he statute does not require the judge to review an issue de novo if no objections are filed.
. . .")

4

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind,

Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[3]

Amy argued to the magistrate judge that the ALJ's assessment of her mental impairments under SSR 96-8p, 1996 WL 374184 (S.S.A. 1996), was not supported by substantial evidence because the ALJ failed to explain how limiting Amy to a low-stress job accommodated her moderate limitation in concentration, persistence, or pace. Amy also argued that the ALJ's physical RFC findings were not supported by substantial evidence because he failed to perform a function-by-function analysis. She argued that the ALJ did not address whether Amy's pain, headaches, and fatigue would result in her taking extra breaks outside those provided by employers or would require her to lie down during the day, or whether she would be able to sustain work over the course of an eight-hour workday. Amy further argued to the magistrate judge that the ALJ's assessment of her subjective allegations

---

[3] Detailed facts about Amy's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 17) and in the administrative transcript (ECF No. 7) and will not be repeated here except as necessary to address her objections.

was not supported by substantial evidence. Finally, Amy argued that the ALJ erred when he found that she did not show good cause for failing to attend the administrative hearing. The magistrate judge found that substantial evidence supported the ALJ's conclusions.

Amy makes the following objections to the magistrate judge's R&R: (1) The magistrate judge erred when he found that the ALJ correctly determined that Amy did not show good cause for failing to attend the hearing; (2) the magistrate judge erred when he concluded that substantial evidence supported the ALJ's conclusion that Amy's limitation in concentration, persistence, and pace was accommodated by limiting her to a low-stress job; (3) the magistrate judge erred when he found that the ALJ addressed Amy's ability to sustain work over an eight-hour day; (4) the magistrate judge erred when he concluded that the ALJ adequately explained how the RFC accommodated Amy's physical limitations; and (5) the magistrate judge erred when he found that substantial evidence supported the ALJ's assessment of Amy's subjective allegations.

## V. Analysis

### A. Attendance at ALJ Hearing

This lawsuit arose out of Amy's second claim for DIB. Amy filed her first application in January 2014 and ALJ Jeffrey J. Schueler held a hearing. ALJ Schueler denied Amy's application for benefits on May 19, 2016 and the Appeals Council denied review. Amy, proceeding pro se, filed an appeal in federal court, naming ALJ Schueler as the defendant. Johnson v. Schueler, No. 7:17-cv-00116 (W.D. Va. filed March 24, 2017). The magistrate judge filed an R&R recommending that the Commissioner's motion for summary judgment be granted and the court adopted the R&R on September 28, 2018. Id. at ECF Nos. 26, 29, 30.

Amy appealed the denial to the Fourth Circuit Court of Appeals which affirmed the denial on February 25, 2020. Id. at ECF No. 34, 35, 36.

In the meantime, Amy had filed a second application for DIB on January 30, 2017. Her application was denied initially and on reconsideration. She requested a hearing and it was set for November 1, 2018 before ALJ Schueler. In August 2018, Amy's husband submitted a statement directed to ALJ Schueler in support of her appeal in which he implied that if ALJ Schueler would award benefits, Amy's husband would get her to "drop charges" in federal court. R. 280.

On the day of the hearing, Amy was present in the building but remained outside the hearing room. Her attorney stated that it was Amy's understanding that the federal appeal of the prior determination was actually a "warrant" against ALJ Schueler for the decision he had made in her prior case and that she believed a new ALJ should be assigned to hear her case. He said Amy did not believe she could have a fair hearing "so she refused to appear today and wishes to make that known." R. 48-49. ALJ Schueler declined to recuse himself, stating that he believed he could adjudicate Amy's claim fairly. He said they would proceed with argument from her attorney and testimony from the vocational expert. He said that after the hearing he would send Amy a notice to show cause as to why she did not appear at the hearing. R. 49-50.

Following the hearing, ALJ Schueler sent Amy an order to show cause for failure to appear and informed her that if she had good cause for failing to appear, another hearing would be scheduled. R. 200-201. Amy responded on her own behalf, stating that she asked her attorney if ALJ Schueler would be aware that Amy had "a judgment and a warrant on" him. Amy said that her attorney told her to wait and he would talk to the ALJ. When the

8

lawyer returned, "they and even I decided to wait for another date to see maybe if I would get [a] different judge." R. 204. ALJ Schueler determined that Amy failed to provide good cause for failure to appear at the hearing. R. 25.

Amy challenged the lack of "good cause" to the magistrate judge, who noted that while the Social Security regulations do not have set criteria for determining what constitutes good cause for failure to appear at a hearing, guidance is found in HALLEX I-2-4-25. Circumstances where good cause may be found include where a claimant did not receive proper notification of a hearing, the occurrence of an unforeseeable event that precluded the claimant from requesting a postponement in enough time before the scheduled hearing, or if the representative withdrew without giving the claimant sufficient notice. Id. The magistrate judge found that Amy provided no reasoning for her claim that the ALJ erred when he concluded that she constructively waived her right to appear at her hearing and no reason for error was found in the record. R&R, ECF No. 17, n.5.

Amy challenges this conclusion and argues that the magistrate judge solely pointed to the representation of Amy's attorney at the hearing and ignored Amy's response to the order to show cause. However, Amy's assertion is incorrect. The magistrate judge quoted from Amy's brief where it stated that "although she was present outside of the hearing room, she 'understood from her attorney that her case was being continued to a different date with a different judge and there was no need for her to go into the hearing room.'" R&R, ECF No. 17, n.5; Pl. Br. Summ. J., ECF No. 12 at 19. Thus, the magistrate judge acknowledged and understood Amy's response to the order to show cause.

9

Amy offers no other objection to the magistrate judge's conclusion about her failure to appear at the hearing and the court agrees with the ALJ and the magistrate judge that Amy failed to show good cause for her failure to attend the hearing. Accordingly, Amy's objection on this issue is **OVERRULED**.

## B. Residual Functional Capacity

### (1) Low Stress Job

The residual functional capacity ("RFC") assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[4] or meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. The limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation requires a more

---

[4] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at *4.

At Step 4, the adjudicator should consider the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, the need for a structured environment, and work evaluations, if available. Id. at *5. The RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

The ALJ in this case first looked at whether Amy had an impairment that met or equaled a listed impairment and did so by examining the "B" and "C" criteria set out in the listings. R. 28-30. The ALJ found that Amy had a moderate limitation in her ability to concentrate, persist, or maintain pace, which referred to her capacity to focus attention on work activities and stay on task at a sustained rate. Id. When a claimant has a moderate limitation, it means that the person has a fair ability to function independently, appropriately, and effectively, on a sustained basis, in the area. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2).

In doing the RFC assessment at Step 4, the ALJ summarized Amy's subjective complaints and reviewed the medical evidence in the record and the opinions of the state agency psychological consultants. The ALJ found that Amy does not experience more than mild limitations in most functional domains but does experience significant stressors in her

11

life that cause moderate limitations and support limiting her to low stress work. R. 36. The ALJ further found that Amy had described some issues with panic attacks and discussed stressors in her life related to her marriage, familial relationships, and past abuse, and while the issues caused symptoms that created concentration issues, the evidence supported no more , than mild limitations in the remaining functional domains.

Amy argued to the magistrate judge that the ALJ failed to explain how his RFC finding that Amy be limited to low-stress work accommodated or addressed her moderate limitations in concentration, persistence, and pace. The magistrate judge found that the ALJ adequately explained how the limitation to low-stress work accommodated Amy's moderate limitation in concentration. The ALJ reviewed Amy's history of mental health treatment and the opinions from state agency physicians about Amy's mental impairments. He noted her issues with panic attacks and recounted the stressors she reported. He also considered his prior 2016 determination where he found Amy's mental impairments to be non-severe. The magistrate judge found that the ALJ's determination that Amy can work at a low-stress job, defined as requiring only occasional decision-making or changes in the work setting, was supported by substantial evidence in the record. Moreover, the magistrate judge pointed out that Amy pointed to no evidence in the record that the ALJ failed to consider or to which he should have given more weight. Amy objects to the magistrate judge's findings, arguing that although the ALJ summarized the record, he never built the logical bridge between the evidence and his RFC findings.

In Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020), the Fourth Circuit explained that while an ALJ cannot summarily account for a claimant's limitations in concentration,

12

persistence, and pace by restricting her to simple routine tasks or unskilled work, there is no categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, and pace as a specific limitation in the RFC. Rather, an ALJ can explain why a claimant's moderate limitation in concentration, persistence, and pace at Step 3 does not translate into a limitation in the RFC. The ALJ in Shinaberry summarized the claimant's psychological evaluations in the record and the opinions of the state agency psychological consultants, along with other evidence in the record and her statements about her difficulties concentrating. He concluded that he accounted for the claimant's limitations tolerating work-related stresses by limiting her to unskilled work requiring simple, routine, and repetitive tasks, "as these limitations comport with the claimant's abilities as supported by objective examination, such as her ability to read and follow a simple command." The ALJ further explained that her statements regarding her ability to pay attention and concentrate also supported additional mental limitations restricting her to jobs requiring only simple, routine, repetitive tasks. Id. at 122. The court found this explanation sufficient. Id.

In Amy's case, at Step 3 of the sequential evaluation, the ALJ noted that the medical evidence showed that Amy generally did not complain to treating practitioners of serious difficulty maintaining concentration, persistence, and pace although she did complain of concentration issues at times. Her treating practitioners did not observe that she was overly distractable or slow. The ALJ further noted Amy's complaints of panic attacks at times and that she exhibited ongoing issues with mood and thought content because of the stressors in her life. The ALJ concluded, "Based on the above, the undersigned finds the claimant has a moderate limitation in concentration that supports the need for a low stress job. The evidence

does not support additional limitations in persistence or pace." R. 29-30. Later, at Step 4, the ALJ limited Amy to low-stress jobs, finding that the stressors in her life caused moderate limitations that supported the limit to low stress work. R. 36.

The court agrees with the magistrate judge that this explanation is sufficient because the court is not left to guess about how the ALJ arrived at his conclusion about Amy's ability to perform relevant functions. <u>Mascio v. Colvin</u>, 780 F.3d 632, 637 (4th Cir. 2015). Accordingly, Amy's objection on this issue is **OVERRULED.**

### (2) Ability to Sustain Work

Amy argued to the magistrate judge that the ALJ did not address her ability to stay on task during an eight-hour day. At the hearing, Amy's attorney argued that her seizures, though small, were not controlled to the point where she would be able to maintain proper attendance at a job. He also argued that her episodes of anxiety and poor concentration would impact her ability to maintain good attendance because she would need extra breaks. R. 50-51. The magistrate judge found that the ALJ explicitly stated that Amy did not have any limitations with persistence or pace that would impact her ability to sustain work over an eight-hour day. The magistrate judge further found that there is no evidence in the record supporting a moderate limitation in persistence or pace and that her subjective statements do not indicate that she has difficulty in sustaining work.

Amy objects to this finding, arguing that the ALJ found that she is moderately limited in concentration, persistence, and pace. She is correct that the ALJ made that finding when he stated, "With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation." R. 29. However, the ALJ also found that other than restricting her to a

low stress job, "The evidence does not support additional limitations in persistence or pace." R. 30. At Step 4, the ALJ concluded that Amy's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 34. In support of this conclusion, the ALJ noted that Amy saw a therapist to establish care on March 7, 2018 and reported having panic attacks two or three times a week, as well as crying spells, irritability, low energy, and issues with concentration. However, with the exception of a depressed mood, her mental status evaluation was within normal limits. R. 33, 413. On subsequent visits, she was noted as being depressed, but generally had normal thought content and processes, except for feeling worthless and hopeless at times. R. 407-412. At a visit on July 3, 2018, Amy reported poor concentration. R. 406.

Therefore, although Amy is correct that the ALJ did find moderate limitations in concentration, persistence, and pace, the ALJ further found that other than restricting her to a low stress job, the evidence did not support additional limitations in persistence or pace. He explained the reasons for his conclusions, i.e., that her mental status exams were mostly within normal limits and she reported improvement in her symptoms. R. 33-34. He also gave some weight to the state agency psychological consultants who found that Amy had no more than mild limitations in most functional domains. R. 36. Thus, the court finds that the ALJ sufficiently supported his conclusion with substantial evidence from the record.

Amy asserts that the ALJ should have addressed her ability to sustain work over the course of an eight-hour day given that he found a moderate limitation in concentration. However, as the magistrate judge noted, nothing in the record supports a finding that Amy

would have difficulty sustaining work over the course of the day. At her therapy visits she showed symptoms of depression, but on only one occasion showed poor concentration. The burden of proof is on the plaintiff for the first four steps of the sequential evaluation, including at Step 4, which relies on the RFC finding. Batchelor v. Colvin, 962 F.Supp.2d 864, 867 (E.D.N.C. 2013) (citing Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)). Although Amy objects to the magistrate judge's conclusion, she cites to no evidence indicating that she cannot work an eight-hour day. Without such evidence, there is no basis for finding the ALJ erred. Accordingly, the court **OVERRULES** this objection.

### (3) Physical Limitations

Amy argued to the magistrate judge that the ALJ's physical RFC findings were not supported by substantial evidence because he failed to conduct a function-by-function analysis and address whether Amy's pain, headaches, and fatigue would result in her needing to lie down during the day and take extra breaks. She also argued that the ALJ did not determine whether she would be able to sustain work activity over the course of an eight-hour day.

The process for assessing a claimant's RFC is set forth in SSR 96-8P, which sets out in relevant part the following:

> The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Other abilities set out in paragraph (d) of the regulation include those affected by

16

skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

The magistrate judge noted that in <u>Mascio</u>, 780 F.3d at 636, the Fourth Circuit rejected a per se rule requiring remand when the ALJ did not perform an explicit function-by-function analysis. The <u>Mascio</u> court found that remand may be appropriate when an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where the ALJ's analysis otherwise frustrates meaningful review.

In Amy's case, the magistrate judge found that the ALJ discussed the record in detail, including the medical evidence where Amy reported small seizures and headaches. He gave great weight to the opinions of the state agency physicians who found that Amy could do light work with additional environmental limitations but assessed additional postural limitations to provide for her safety and account for her pain complaints. The ALJ noted that although Amy may experience some pain and discomfort, mild to moderate pain or discomfort is not incompatible with the performance of sustained work activity. R. 36. The magistrate judge found the ALJ's assessment to be sufficient because the narrative discussion allowed the court to see how the evidence supported the ALJ's RFC determination.

Amy broadly objects, arguing that the magistrate judge erred in all findings related to her physical impairments. Upon review of the ALJ opinion and the magistrate judge's findings, the court agrees that the ALJ's RFC determination is supported by substantial evidence. The ALJ summarized Amy's medical records, including the records from the doctors who treated her for multiple sclerosis and seizures. In September 2016, Amy saw a neurologist complaining of seizures, fatigue, and head pain. It had been two years since her last visit. Her examination

17

was within normal limits, other than Amy appearing to be uncomfortable, and the neurologist ordered additional testing. At her next visit to the neurologist, she was prescribed medication for seizures and migraine headaches. R. 32, 292-94. In February 2017, Amy continued to report small seizures and headaches and her examination was within normal limits except for her appearing to be uncomfortable. R. 376. At a visit to the neurologist in August 2018 she reported persistent fatigue, intermittent headaches, and occasional small seizures. She again was described as looking uncomfortable but her neurological exam was normal. Her most recent MRI possibly showed a new lesion in the thoracic cord. R. 390-391. On August 28, 2018, she had an electroencephalogram (EEG) that was normal with no epileptiform discharges both when she was awake and asleep. Although no abnormalities were noted, her medications were increased. R. 443.

The ALJ found that Amy's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the medical evidence and other evidence in the record. R. 34. The ALJ gave some weight to the prior decision in Amy's case that she was not disabled and found that evidence not considered in the prior case did not show a significant change in her physical health and functional ability. The ALJ also explained that he gave significant weight to the state medical consultants' opinions that Amy could do light work with environmental limitations, but given her diagnoses of multiple sclerosis and seizures, he imposed additional postural limitations. The ALJ acknowledged Amy's complaints of pain and fatigue, and some difficulties with ambulation, but found her complaints were out of proportion with the weak and inconsistent objective medical findings.

18

He found that it is likely that she experiences some pain and fatigue but accounted for it by limiting her to light work with postural and environmental limitations. He added that the limitations he imposed also accounted for her seizure activity and headaches. R. 36.

This explanation by the ALJ was sufficient to allow meaningful review by the court. The ALJ summarized the medical and opinion evidence in the record and explained that the evidence was not fully consistent with Amy's complaints of fatigue and headaches so severe that she was unable to work. In her objections, Amy pointed to nothing in the record showing that the ALJ erred in his assessment. Accordingly, the court finds that the ALJ opinion on Amy's physical capabilities is supported by substantial evidence and **OVERRULES** this objection.

### (4) Subjective Allegations

The regulations that were in effect at the time Amy filed her claim provided the following discussion of how the Social Security Administration analyzes subjective allegations of symptoms:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 416.928(b) and (c). By other evidence, we mean the kinds of evidence described in §§ 416.912(b)(2) through (8) and 416.913(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work . . . . We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work . . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical

impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you . . . . We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work . . . .

20 C.F.R. § 416.929 (2011).

Amy argued to the magistrate judge that the ALJ's decision to not fully credit her subjective allegations of symptoms was not supported by substantial evidence. The ALJ found her subjective allegations out of proportion to the "weak and inconsistent" objective medical findings, citing no significant loss of range of motion, no consistent multi-joint inflammation, no reduced grip strength in her hands, no loss of color in the allegedly affected regions, and no muscle spasm or muscle atrophy. The ALJ also noted that brain and spine images showed no progression of Amy's multiple sclerosis and her EEGs were normal. In addition, he noted that the records did not show that Amy had difficulty initiating movement, moving generally, or muscle tremors. R. 36.

Amy pointed out that multiple sclerosis is a neurological disorder and does not manifest as joint inflammation, loss of color in the affected regions, muscle spasms or muscle atrophy. In addition, Amy's neurologist noted that a normal EEG does not necessarily exclude seizures.

In the R&R, the magistrate judge agreed that objective evidence is not required to find a claimant disabled by pain or other symptomology, citing Arakas v. Comm'r, 983 F.3d 83 (4th

Case 7:20-cv-00173-MFU-RSB   Document 20   Filed 08/17/21   Page 21 of 24   Pageid#: 781

Cir. 2020). In addition, the magistrate judge cited SSR 16-3p, 2016 WL 1119029, at *4 (S.S.A. 2016), which states that "symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." The magistrate judge went on to find that although the ALJ noted a lack of joint inflammation, loss of color in the affected regions, muscle spasms, and muscle atrophy, which would not necessarily contradict Amy's alleged symptoms, that ALJ also noted that Amy's records showed that she was doing well from a multiple sclerosis standpoint, with an MRI showing that the multiple sclerosis was not progressing, and that she had normal EEGs. While normal studies do not necessarily exclude seizures or foreclose exacerbations of multiple sclerosis symptoms, the ALJ acknowledged Amy's symptoms by limiting her to light work with environmental and postural limitations. The magistrate judge further found that the only evidence of Amy's subjective complaints of pain was in her reports to her physicians and none of her physicians opined that her impairments would cause her to be unable to work. In addition, Amy did not point to any specific subjective complaint that the ALJ ignored or improperly discounted. The magistrate judge concluded that the ALJ opinion was supported by substantial evidence.

Amy cites Arakas, and objects that the magistrate judge erred in his assessment because the ALJ committed the same error as the ALJ in Arakas of discounting a claimant's subjective allegations based solely on a lack of objective evidence. In Arakas, the plaintiff alleged disability in part on her diagnosis of fibromyalgia, "a disease whose 'symptoms are entirely subjective,' with the exception of trigger point evidence." Id. at 96 (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)). Physical examinations of patients with fibromyalgia are typically normal, with a full range of motion, no joint swelling, and normal muscle strength and

neurological reactions. Id. (citing Green-Younger v. Barnhart, 335 F.3d 99, 108-09 (2d Cir. 2002) and Lisa v. Sec. of the Dep't of Health & Human Servs., 940 F.2d 40, 45 (2d Cir. 1991)). In assessing Arakas' RFC at Step 4 of the sequential evaluation, the ALJ found that her subjective complaints regarding the severity, persistence, and limiting effects of her symptoms were "not reliable" and "not completely consistent with the objective evidence." Arakas, 983 F.3d at 94. The ALJ emphasized that the doctors' reports failed to show the clinical and laboratory abnormalities one would expect if the plaintiff were disabled. Id. at 96.

The Arakas court held that it is error for an ALJ to improperly discount a plaintiff's subjective complaints of pain and fatigue based largely on the lack of objective medical evidence substantiating her statements. Id. The ALJ relied principally on findings of a full range of motion and the lack of joint inflammation to discount Arakas' subjective complaints as being inconsistent with the objective evidence, but in doing so he applied an incorrect legal standard. Id. The error was "particularly pronounced" in a case involving fibromyalgia, a disease whose symptoms are entirely subjective. Id.

Amy's case differs from that of Arakas in an important way. One of Arakas' treating physicians submitted three opinion letters in support of her claim for disability benefits. In the first, he stated that he had treated her for many years and opined that she was unable to sustain full-time work activity. In a second letter, he wrote that fibromyalgia typically did not produce laboratory abnormalities and one of her other impairments, degenerative disc disease, had caused her to have chronic cervical spasm as evidenced by a cervical MRI. Id. at 92. The doctor also stated that fibromyalgia was associated with chronic cognitive dysfunction and that medication required for treatment also impaired her concentration and prevented her from

sustaining an eight-hour workday. In a third letter, the doctor described the chronic pain and fatigue cause by the fibromyalgia and stressed Arakas' inability to sustain work activity. Id. In addition, state agency psychological consultants assessed Arakas' psychological condition and limitations and noted that her fibromyalgia could be causing her depression and problems with concentration and attention and that her fibromyalgia might interfere with her ability to work full time. Id. at 93. The ALJ rejected the doctors' reports because they "fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were disabled" and repeatedly cited her normal exam results. Id. at 96. As discussed, the ALJ's rejection of Arakas' doctor's report for lack of clinical and laboratory abnormalities was found to be error. Id.

Amy does not point to evidence from her treating physicians or from the state agency consultants that supports her claims of disabling pain and fatigue. To be sure, her doctors have diagnosed her with multiple sclerosis and seizures, but their observations of her are limited to noting that she appeared "uncomfortable" during exams. R. 290, 293, 372, 376. She also was described as "doing well from a multiple sclerosis standpoint." R. 345. Unlike in Arakas, Amy's treating physicians have noy offered opinions on her ability to work, much less opined that she is unable to work because of her symptoms.

Thus, Arakas is distinguishable from Amy's case. The court finds that the ALJ properly assessed Amy's subjective complaints of pain and fatigue, and properly explained why he discounted her subjective complaints. Accordingly, the court agrees with the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence and **OVERRULES** this objection.

## VI. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: *August 16, 2021*

Michael F. Urbanski
Chief United States District Judge